**Elizabeth HAYNSWORTH, Plaintiff,**

v.

**SOUTH CAROLINA ELECTRIC AND GAS COMPANY, a public utility incorporated under the laws of the State of South Carolina, Defendant.**

**Civ. A. No. 76–2495.**

United States District Court,
D. South Carolina,
Columbia Division.

March 7, 1979.

Victoria L. Eslinger, Palmetto Legal Services, Columbia, S. C., Lucy M. Knowles, Aiken, S. C., for plaintiff.

George S. King, Jr., Columbia, S. C., for defendant.

## ORDER

CHAPMAN, District Judge.

Plaintiff brings this action under the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*, seeking damages and injunctive relief. On February 8, 1979, this matter was heard before a jury, and at the close of plaintiff's case upon motion of the defendant, the Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, directed a verdict for defendant on the ground that plaintiff failed to show a violation of the ECOA. Still to be disposed of, however, is plaintiff's claim for declaratory and injunctive relief. Plaintiff asserts that the policy and practices of defendant as applied to her violated the provisions of the ECOA.

Plaintiff resided with her husband at their home on Springlake Road in Columbia until their separation in the spring of 1975 at which time her husband moved elsewhere. The account with defendant servicing the residence was in the name of plaintiff's husband. Plaintiff continued to live in the home with her three children and, in the autumn of 1975, requested that the defendant open a new account in her name for the utilities service to the house. At the time of this request, there existed an outstanding balance in the account in her husband's name servicing the residence for use since his departure. Defendant refused plaintiff's request because of this outstanding obligation for service to plaintiff's residence in reliance upon section 4(b) of defendant's General Terms and Conditions which states as follows:

> Service will not be supplied by the Company to any applicant who is then indebted to the Company or who, at the time of application, is a member of the household of a former customer who is indebted to the Company, except upon payment of such indebtedness.

Plaintiff repeated this request through February 1976, but defendant refused for the reason already stated.

Over this period of time, although defendant threatened to terminate service to the residence, defendant maintained service. Refusing to pay the total bill for service from September 1975 to March 1976 because she considered it her husband's bill, plaintiff made "good faith" payments of $25 per month to defendant. In March 1976, plaintiff finally reached a divorce settlement with her husband that included payment of the outstanding obligation due defendant. On April 19, 1976, her husband paid defendant's bill for the Springlake home, and the following day, defendant opened an account for the residence in plaintiff's name. Plaintiff 's testimony also disclosed that during December 1975 plaintiff's husband opened a new account in his name at another location. Plaintiff did state, though, that defendant admitted such action was inadvertent.

Plaintiff seeks a judgment by this Court, declaring that the practices of defendant and its section 4(b), as exhibited by the facts of this case, violate the ECOA which makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction— on the basis of . . . sex or marital status." 15 U.S.C. § 1691(a). Plaintiff also asks that the defendant be enjoined from further violations of the ECOA. Plaintiff has not sought to impress liability because of any failure of defendant to comply with

the technical form requirements of the Act but, instead, argues that defendant discouraged her pursuit of credit and denied her requests for credit on the basis of plaintiff's sex and marital status, not on the basis of her own "creditworthiness". Plaintiff submits that the fact that her husband procured a new account in his own name, while plaintiff was denied the same treatment, makes out a prima facie case that she was discriminated against because of her sex.

The basis for defendant's conduct in its transactions with plaintiff and the primary target of plaintiff's declaratory action is section 4(b) of defendant's General Terms and Conditions, set out above. Plaintiff contends that its terms and application to her in the present case violate the ECOA since a person may be denied credit due to marriage to another individual without regard to that person's own creditworthiness.

■ It is important to note that in the instant case, defendant never denied plaintiff credit. "*Credit* means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase . . . services and defer payment therefor." 12 C.F.R. § 202.2 (1978). The plaintiff was the sole adult in their Springlake Road residence,[1] and plaintiff used defendant's services with full knowledge that they were not rendered gratuitously. In a similar situation involving the consumption of water where the existing contract covering the premises was not in the name of the consumer, the Supreme Court of South Carolina found there was an implied contract by the consumer to pay for the amount of water consumed. *Poole v. Paris Mountain Water Co.*, 81 S.C. 438, 62 S.E. 874 (1908). Thus, even though plaintiff may have considered her husband responsible for the power bills during the months in dispute, an implied contract existed that she would pay for these services.

Defendant could have, at any time, proceeded against plaintiff to recover on the outstanding balance. Defendant, as a creditor, permitted plaintiff to receive services and defer payment; therefore, plaintiff did receive "credit" from the defendant.

■ Defendant's refusal to place the account to plaintiff's home in her name was based on the portion of section 4(b) that provides that "[s]ervice will not be supplied by the Company to any applicant who is then indebted to the Company . . . except upon payment of such indebtedness." Plaintiff calls upon this Court to determine whether this provision runs afoul of the ECOA under the facts of this case. The Court decides that it does not and to hold otherwise may violate defendant's right to due process under the Fifth Amendment.

A fundamental reason why enforcement of defendant's provision toward plaintiff does not conflict with ECOA is because an applicant in the same situation as plaintiff is not discriminated against on the basis of sex or marital status. The controlling consideration in defendant's decision was the fact that plaintiff was then obligated under an implied contract with defendant and delinquent on the payment of this obligation. That plaintiff was married to the individual whose name the account was in is incidental. Had plaintiff been her husband's brother, instead of his wife, under the same circumstances of consumption, the same request would have been treated in the same manner. Plaintiff's sex or marital status was not the critical factor for consideration under defendant's section 4(b); rather, the provision prohibits those who are indebted to defendant from opening new accounts. A decision stemming from this clause is therefore made on the creditworthiness of the applicant and is not premised on one of the prohibited bases.[2]

1. From the time her husband left in 1975 until the domestic differences were settled in March 1976.

2. The circumstances of the present case should be distinguished from instances where the applicant is refused a new account because of

past utility services rendered to the dwelling that were made while the applicant was not residing there and for which the applicant is not responsible. Such refusals may run afoul of the Fourteenth Amendment. See, *Craft v. Memphis Light, Gas and Water Division*, 534

Under defendant's section 4(b) all applicants who are indebted to defendant receive the same treatment. The provision, in instances characterized by plaintiff's circumstances, does not result in unlawful discrimination, for discrimination against an applicant means "to treat an applicant less favorably than other applicants". 12 C.F.R. § 202.2(n) (1978). Plaintiff submits, however, that she was treated less favorably than another applicant also indebted to the defendant when defendant opened a new account for her husband while the account for the Springlake Road home was still delinquent. Plaintiff testified that defendant admitted that her husband's success in opening this account occurred because of inadvertence and mistake on the part of defendant. The portion of defendant's General Terms and Conditions that is now being challenged bolsters a finding of inadvertence as regards her husband's transaction, since such was contrary to the clearly expressed conditions of defendant's operation. This occurrence cannot be attributed to defendant's section 4(b), because the provision requires similar treatment. The establishment of a new account in her husband's name was not due to the application of the provision in an unequal manner but, instead, to an administrative failure to realize the provision was applicable in the first place. There was no showing that this discrepancy in treatment occurred in any instance other than the one discussed. Contrary to proof of conscious invidious discrimination by defendant, the facts of this case display plaintiff's husband would have received the same treatment as plaintiff, had defendant not made an inadvertent administrative error. The Court, therefore, disagrees that this discrepancy in treatment may be attributed to unlawful discrimination.

Neither defendant's refusal to initiate a new account in plaintiff's name, nor the application of its section 4(b) with respect to her, constitutes unlawful discrimination under 15 U.S.C. § 1691. Defendant rejected plaintiff's request to put the account for the residence in her name because of her indebtedness to the defendant. The more favorable treatment that defendant inadvertently accorded her husband does not show defendant's less favorable decision as regards her was based on her sex or marital status.

This Court further finds that, far from being an illegal provision, the portion of defendant's section 4(b) under scrutiny is necessitated by the nature of defendant's business. This Court will not sanction a holding that would require defendant to continue service to a dwelling, even though the present account has a large overdue balance, just because a request is made by another member of that dwelling to put the account in his or her name. Such a holding would render the defendant powerless to collect its due and bind it into providing continuous utilities service without compensation, other than the minimal deposit made by the new applicant. If this Court were to rule as plaintiff urges and strike down defendant's section 4(b), every member of every household would be permitted to take a swing at the power company, amassing a substantial bill at the price of a small deposit. Even though the applicant may have resided in the dwelling and consumed power over the period the outstanding bills to that location were run up, the defendant would be required to continue utilities service to the dwelling. No resort to imagination is needed to envision the abuses that could ensue in a "commune" situation.

Plaintiff asks the Court to disregard totally the most important fact of this lawsuit. That fact is that she and other applicants in her position have, at the time of application, received the benefit of defendant's services without compensation to the defendant. If this Court were to find defendant's section 4(b) unlawful, defendant would be left with little hope of resolving

F.2d 684 (6th Cir. 1976). Of course, such a challenge would require a showing of state action. *Jackson v. Metropolitan Edison Co.*,

419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

its outstanding accounts out of court. No longer could it use the denial of future service to those who apply and who are indebted to the defendant for past consumption as a means of insuring payment of its accounts. Defendant would have no recourse for collection except the courts, because the threat of termination would become meaningless. Once notice of termination was given, a member of the same household of the person, whose name the account was in, could make application for service. Defendant would be forced to maintain service to the residence. Defendant would be stripped of any leverage it presently has for achieving payment of its bills—the customer, indebted to defendant for past use, could not be denied future service because of this indebtedness.

If this Court were to hold the ECOA made defendant's section 4(b) unlawful under the facts of this case and, thus, permit the appropriation of defendant's property in the manner just described, the Court risks transforming the ECOA into confiscatory legislation that unjustly takes defendant's property without compensation. The declaration of illegality that plaintiff urges upon this Court would deprive defendant of its property in violation of its right to due process under the Fifth Amendment.

Moreover, there is no reasonable relationship between this severe deprivation and the purpose of the ECOA. In deciding as the Court does, it considers those instances, such as in the present case, where the applicant, at the time of application, is indebted to the creditor for prior use or purchase of its utilities service. The applicant has received credit. The major purpose of the ECOA is "to require that financial institutions and other firms engaged in the extension of credit make that credit equally available to all creditworthy customers without regard to sex or marital status." 1974 *U.S.Code Cong. and Admin.News*, pp. 1724, 1750. The holding of the Court is in consonance with and in furtherance of this purpose, since defendant had made credit available to plaintiff and its failure to perform as requested was the result of plaintiff's own creditworthiness.

The application of defendant's section 4(b) to the facts of plaintiff's case is in harmony with the law of South Carolina as well as the federal ECOA. The provision of defendant's General Terms and Conditions that plaintiff seeks to have set aside expressly enacts the following regulation of the state's Public Service Commission:

> k. No electrical utility shall be required to furnish its service or continue its service to any applicant who, at the time of such application, is indebted, or any member of his household is indebted, under an undisputed bill to such electrical utility for service, previously furnished such applicant, or furnished any other member of the applicant's household or business. R103–342(k) S.C.Code (1976).

It is undisputed that the plaintiff resided in her Springlake Road home and used defendant's services during her separation from her husband. When she requested the account to her home be put in her name in September, 1975, she was indebted to defendant, and the above regulation directed and fully warranted defendant's refusal to open a new account in her name. As the Court has already expressed, this regulation, since it comports with defendant's section 4(b), is reasonable. A finding that this provision of defendant's General Terms and Conditions violates the ECOA would, then, amount to a determination that Regulation 103–342(k) also transgresses this federal law. For the reasons elaborated upon earlier, the Court concludes defendant's conduct in the present case accorded with the ECOA, and, therefore, it will not implicitly strike down the parent regulation.

In sum, plaintiff was not discriminated against because of her sex or marital status but was treated the way she was because of an existing, unpaid obligation to the defendant. The portion of defendant's section 4(b) brought under scrutiny in the present action conflicts with neither the terms nor purpose of the ECOA and comports with state law. A finding to the contrary may result in a deprivation of

defendant's constitutional right to due process. For these reasons, the Court hereby declares that defendant's policies and practices that were used in the instant case do not violate the provisions of 15 U.S.C. § 1691 *et seq.* and the regulations promulgated thereunder, and the Court, therefore, denies plaintiff the injunctive relief requested.

AND IT IS SO ORDERED.