Sharon A. VANDER MISSEN, Plaintiff,

v.

KELLOGG–CITIZENS NATIONAL BANK OF GREEN BAY, Defendant.

No. 78–C–671.

United States District Court, E. D. Wisconsin.

Dec. 4, 1979.

Thomas E. Bush, Milwaukee, Wis., for plaintiff.

Todd J. Schmeling, Schmeling, Muraski & Wheeler, Green Bay, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a civil action brought by plaintiff for an alleged violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, and the regulations promulgated under it. Plaintiff alleges that in November of 1977, defendant unlawfully denied her credit, in violation of the Act, on the basis of her husband's unfavorable credit rating. A jury trial was granted by this Court on August 10, 1979, 83 F.R.D. 206. Three sets of motions are presently before this court regarding: requests for admissions, an answer to a certain interrogatory, and a proposed newspaper notice sought by plaintiff.

15 U.S.C. § 1691(a) provides:

It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

(1) on the basis of . . . sex or marital status . . .

Once a defendant has been shown to have violated section 1691 or its regulations, punitive damages may be awarded under section 1691(a).

## ANSWER TO INTERROGATORY

The first set of motions before this Court concerns defendant's objection to an interrogatory sought by plaintiff. Interrogatory II, number 7, requested defendant to explain in detail what steps it has taken since November of 1977, the time of the alleged violation, to assure that future credit applicants will not be discriminated against on the basis of sex. Defendant objected to this interrogatory on the ground that evidence of measures taken after the alleged violation are not admissible to prove culpable conduct by the defendant in relation to the plaintiff. Plaintiff, on August 13, 1979, filed a motion with this Court to require that defendant answer the request for the interrogatory. Defendant, in its motion in limine filed with this Court on August 29, 1979, requested this Court to limit plaintiff and her attorney at trial from referring to or in any way informing the jury of any facts or circumstances involved in the interrogatory.

Federal Rule of Evidence 407 provides: When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Plaintiff, in seeking defendant's response to the interrogatory, contends that such information is relevant to the issue of punitive damages. 15 U.S.C. § 1691e provides:

Any creditor . . . who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages . . . . In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

The particular factors at issue in this case are "the frequency and persistence of failures of compliance by the creditor, and the extent to which the creditor's failure of compliance was intentional."

■ Plaintiff has taken the position that the "frequency and persistence of failures of compliance by the creditor" refers to failures of compliance as against other applicants not parties to the instant proceeding. A reading of the statutory language, however, suggests that the phrase refers to failures of compliance by defendant as against the particular plaintiff or plaintiffs involved in a specific action. Section 1691e(b) lists factors to be considered in awarding punitive damages in individual and class actions. Certain factors, such as the amount of the actual damages award, the resources of the plaintiff or plaintiffs, and the extent such noncompliance was intentional, appear to be more applicable to individual than class actions. The frequency and preexistence of a creditor's failure of compliance, however, appears to apply more to other plaintiffs in a class action than to parties not involved in a particular action.

Indeed, the legislative history of the Act reveals that many of the factors enumerated in section 1691e(b) were designed to be protective measures for the Court to consider in its determination of the amount of punitive damages in a class action. The Senate Committee on Banking, Housing and Urban Affairs stated that the list was intended to protect defendant creditors from severe economic harm in class actions due to an increase in the ceiling on punitive damages. S.Rep.No. 685, 94th Cong., 2d Sess. 14 (1976), U.S.Code Cong. & Admin. News 1976, p. 403. The list of factors thus appears to have been included to protect class action defendants rather than to aid plaintiffs in obtaining punitive damages,

and its language must be construed accordingly. As such, the phrase "failures of compliance" appears to apply solely to defendant's failure of compliance with respect to the particular plaintiff in this action.

The only reported case concerning the other factor of 1691e(b) at issue, "the extent to which the creditor's failure of compliance was intentional," is *Shuman v. Standard Oil Company of California*, 453 F.Supp. 1150 (N.D.Cal.1978). There, the court, in discussing the ambiguity of section 1691e, reviewed the legislative history of the Act. The court noted that the House version of the bill proposed to limit such damages to "willful" violations of the Act or its regulations. *Id.* at 1155; H.R.No. 210, 94th Cong., 1st Sess. 9 (1975). The Joint Conference Committee, however, chose to omit any reference to willfulness in the final version of the bill, apparently because it was akin to criminal, rather than civil statutory language. *Id.*; H.R.No. 210, 94th Cong., 1st Sess. 18 (1975).

After asserting that a creditor's violation must be intentional in the sense of a purposeful denial of credit before punitive damages may be awarded under the Act, the court in *Shuman* discussed the standard of intent to be followed in such cases:

> The most sensible reading of the statute adopts something of a middle course. Since punitive damages are awarded to punish the defendant and to serve as an example of warning to others not to engage in the same conduct, they are only justified when the defendant has committed a particularly blameworthy act. Consistent with this principle, however, Congress might have intended to punish creditors who acted in reckless disregard of the requirements of the law, even though they did not have in mind the specific purpose of discriminating on unlawful grounds. If this interpretation is adopted the language 'the extent to which the creditor's failure of compliance was intentional' is read as a reference to the specific intent to discriminate on prohibited grounds. Designation of the damages as 'punitive,' on the other hand, implies a

threshold requirement that the defendant has acted in reckless disregard of the requirements of the law. *Id.*

Plaintiff argues, however, that the reckless disregard test of *Shuman* is not a threshold requirement for a showing of punitive damages. Rather, plaintiff contends that the "effects" test, as stated in *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), an employment discrimination case, is appropriate. In establishing this test, the Court in *Griggs* stated that "good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." *Id.* at 432, 91 S.Ct. at 854. Thus, an employment policy may be labelled discriminatory, in the absence of a discriminatory intent, if its effect is to preclude qualified minority groups from employment.

The "effects" test, however, applies not to the award of punitive damages under section 1691, but to the legality of the initial determination of an applicant's credit worthiness. Footnote seven of 12 C.F.R. 202.6(a) states that the "effects" test may be applied to the issue of whether a facially nondiscriminatory credit evaluation system is discriminating in effect. Further, a House report concerning the Act stated that the statutory provisions were not intended to limit the use of population statistics to establish a *prima facie* case of discrimination "in accordance with the 'effects' test . . . ." H.R.Rep.No. 210, 94th Cong., 1st Sess. 5 (1975). A Senate report concerning the Act took a similar position when it stated that "[i]n determining the existence of discrimination . . . courts or agencies are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in individual transactions. . . ." S.Rep.No. 589, 94th Cong. 2d Sess. 4, U.S.Code Cong. & Admin.News 1976 at p. 406 (1975).

It is thus clear that the use of the "effects" test was intended by Congress to be limited to the determination of whether

discriminatory practices exist in the first instance. Once such practices are shown to exist, there is no indication that the test was intended to have any role in determining the necessity or amount of punitive damages.

Applying the standard in *Shuman* to the present case, then, any steps taken by defendant to prevent future acts of sex discrimination after the alleged violation regarding plaintiff, are inadmissible to show any reckless disregard by defendant of the requirements of the law. Federal Rule of Evidence 407 specifically states that evidence of subsequent remedial measures taken by a party are inadmissible to show the culpable conduct of the party.

Furthermore, acts occurring after the alleged violation are irrelevant as to defendant's reckless disregard of the requirements of the ECOA regarding plaintiff. Federal Rule of Evidence 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendant's modification of its application procedures, after its denial of credit to the plaintiff to prevent discrimination regarding future clients, has no bearing on whether defendant acted in reckless disregard of the ECOA requirements in its denial of credit to plaintiff. Only the defendant's procedures regarding plaintiff's application before or after its denial would be probative of defendant's intent. Because any answer to plaintiff's request for interrogatory II, number 7, would be inadmissible, defendant's motion in limine must be and is hereby granted.

## REQUESTS FOR ADMISSIONS

The next set of motions before this Court concerns requests for admissions sought by plaintiff. Defendant, in its August 1, 1979 response to plaintiff's requests for admissions, objected to each of the nine admissions at issue as irrelevant and as not probative of a material issue in this lawsuit. Plaintiff then moved this Court, on August 13, 1979, to determine the sufficiency of defendant's objections to the admissions. Defendant, on August 29, 1979, filed a motion in limine requesting this Court to prevent plaintiff or her attorney from informing the jury of any of the facts or circumstances involved in the request for admissions.

Plaintiff argues that each of the requests for admissions is relevant to the issue of punitive damages under 1691e(b), particularly "the frequency and persistence of failures of compliance by the creditor," and "the extent to which the creditor's failure of compliance was intentional." Defendant contends that none of the requests for admissions is relevant because defendant either satisfied its duty under the Act or was under no duty regarding the acts of omissions defendant was requested to admit.

Defendant contends that requests for admissions numbers 1, 14 and 15 are irrelevant because defendant was under no duty as to any acts involved in the requests. These requests for admission concern a policy regarding sex discrimination set up by defendant bank's board of directors in September of 1977, less than two months before the alleged violation. Plaintiff has requested defendant admit that this was defendant's only such policy, that it was adopted with little or no discussion of ECOA requirements, and that prior to November of 1977, sex discrimination was never discussed at the meeting of defendant's board of directors.

There is no requirement in the ECOA or its regulations that a creditor have a policy concerning sex discrimination in its credit evaluations. Despite this, defendant, through its answers to other requests for admissions and interrogatories, has furnished plaintiff with its policy as well as policy statements and documents transmitted to the loan officer handling plaintiff's application. Since defendant had no duty under the Act to institute such a policy, and since defendant has furnished plaintiff with ample evidence concerning its policy, the information requested by plain-

tiff is irrelevant to defendant's failure of compliance with the ECOA.

Defendant further contends that requests for admissions 3, 4, 8, 11, 16 and 18 are irrelevant because plaintiff has alleged no facts from which any actions or omissions which defendant was requested to admit could be considered failures of compliance by defendant. These requests for admission concern the credit denial forms of the defendant, its record retention procedures, its lack of use of pamphlets regarding applicants' rights under ECOA, and its disclosures concerning the consideration of child support.

Defendant, in requests for admissions 13 and 18, has been asked to admit that it made no effort, between March 23, 1977 and November 30, 1977, to inform any prospective borrowers including plaintiff of their rights under ECOA. Defendant has assumed, and this Court agrees, that plaintiff is specifically inquiring as to any written statement of rights contained in defendant's letters of credit denial. While the facts are in dispute concerning the addressee of the letter, defendant did sent a letter to plaintiff's residence denying credit, and stating that one reason was plaintiff's husband's insufficient credit history.

12 C.F.R. § 202.9 provides procedures under which notification of adverse action is required, along with either a statement of reasons or a notification of one's right to such reasons upon request. The necessity for such procedures is limited, however, under 12 C.F.R. § 202.3. Where an extension of credit is primarily for business or commercial ventures, the procedures under section 202.9 do not apply unless, within 30 days after oral or written notification of adverse action, the applicant requests, in writing, the reasons for such action. 12 C.F.R. § 202.3(e)(2).

■ Plaintiff's credit application concerned the purchase of a Mac Tool distributorship, clearly a business or commercial venture. Defendant thus had no duty to provide plaintiff with an ECOA notice of the reasons for defendant's denial absent a written request by plaintiff. Plaintiff, however, has not alleged that she made any such written request. Defendant can thus not be considered as exhibiting a failure of compliance with the Act, and any admission concerning the notification would be irrelevant.

Plaintiff has also requested, through requests for admissions 4 and 16, that defendant admit that it did not retain plaintiff's application for at least 90 days and has no internal memoranda concerning record retention. Creditors are generally under a duty to retain a credit application form for 25 months after notification of action taken. 12 C.F.R. § 202.12. This requirement is eliminated, as in the notification of adverse action, where credit was to be used for a business or commercial venture. Retention is not required in these instances, unless, within 90 days after the taking of adverse action, an applicant requests such retention in writing. 12 C.F.R. § 202.3(e)(4).

Plaintiff has not alleged the existence of such a written request for retention by plaintiff within the required 90 days. Absent any such obligation, defendant can in no way be considered as having any duty of retention, and the information requested by plaintiff is irrelevant.

■ Plaintiff has also requested, through request for admission 18, that defendant admit that it did not regularly provide pamphlets or other literature to its patrons concerning applicants' rights under ECOA. The Act prescribes no duty for a creditor to affirmatively provide prospective credit applicants with information of their rights under the Act. The creditor's duty regarding information provided to prospective clients is limited to that in 12 C.F.R. § 202.5(a), under which a creditor shall not make an oral or written statement which would discourage, on a prohibited basis, a reasonable person from making or pursuing an application.

The placement, or lack thereof, of informational pamphlets concerning one's rights under ECOA bears no relation to any act by defendant discouraging a credit application.

Furthermore, plaintiff has not alleged that defendant in any way discouraged any applications. The existence, or lack thereof, of any pamphlets by defendant is therefore irrelevant.

Under request for admission 11, defendant was asked to admit that the loan officer involved in plaintiff's application did not explain to plaintiff that she was not required to disclose child support if she did not want to rely on that income in her credit application. Plaintiff, however, has not alleged either the presence of absence of such disclosure. Plaintiff has only alleged that defendant checked and considered the credit record of plaintiff's husband, without plaintiff's request or consent, in denying her credit. Since any disclosure, or lack thereof, by defendant concerning child support received by plaintiff is not probative on the issue of defendant's consideration of plaintiff's husband's credit record, the request for admission is irrelevant.

Because the information sought by plaintiff in her requests for admissions 1, 3, 4, 8, 11, 14, 16 and 18 are irrelevant to any issue as alleged by plaintiff, plaintiff's motion to compel defendant's response to requests for admissions must be and is hereby denied. For the foregoing reasons, defendant's motion in limine must be and is hereby granted.

### PROPOSED NEWSPAPER NOTICE

The final set of motions before this Court concerns a proposed newspaper notice in which plaintiff seeks to advertise for witnesses to aid her in her proof of punitive damages. Under plaintiff's motion filed with this Court on September 10, 1979, the notice, which would appear in a Sunday Green Bay, Wisconsin newspaper, seeks women who have applied for loans from defendant within the past five years and feel that they have been treated differently than a man under similar circumstances. Defendant filed a motion in limine II with this Court on October 12, 1979, seeking an order preventing plaintiff or her attorney from informing the jury of any circumstances surrounding this matter.

Plaintiff argues that this notice is necessary because of defendant's objections to certain interrogatories requested by plaintiff. These interrogatories requested plaintiff to identify the number of women who had applied for loans from the defendant bank since March 23, 1977, had been granted loans, denied loans, and who had applied under the loan officer who handled plaintiff's application. Defendant objected to these interrogatories on the grounds that the information was not classifiable, that if classifiable could be a violation of the Act, that classification would invade the privacy rights secured by defendant, and that any response would be unfairly prejudicial, misleading and confusing to the jury.

As has previously been discussed, the legislative history of the ECOA suggests that the factors enumerated in section 1691e(b) were intended to protect class action defendants from severe economic injury, rather than to authorize the consideration of violations against persons not involved in the instant action. Given this interpretation, any unfair denials by defendant of credit to women other than plaintiff are irrelevant to failures of compliance by defendant with respect to plaintiff.

Furthermore, severe administrative problems would occur with the publication of such a notice. Plaintiff's attorney has taken steps to prevent any charge against him of solicitation of clients through the use of the advertisement. However, there is no requirement in the proposed notice that only women whose claims have been adjudicated as violations respond. In addition, by seeking women who have been denied credit within the last five years, plaintiff may receive responses from women whose claims are barred by the two-year statute of limitations, 15 U.S.C. § 1691e(f). The introduction of testimony by such or about women whose claims are unproven or untimely, would be severely prejudicial, misleading and confusing to the jury. Because of the irrelevancy of the proposed notice, as well as the practical problems involved in its use,

plaintiff's motion must be and is hereby denied and defendant's motion in limine must be and is hereby granted.

Plaintiff, in her reply memorandum filed with this Court on October 9, 1979, has indicated that she will advertise for witnesses in accordance with her proposed notice whatever this Court's determination with regard to her motion. While this Court does not wish to prevent plaintiff from exercising her right to free speech, this Court will continue to abide by its determination that no information regarding any women responding to plaintiff's notice shall, directly or indirectly, be made known to the jury should this case come to trial.

The Court must also caution plaintiff's attorney with respect to the placement of any such newspaper notices. Should plaintiff's attorney represent any of the women who respond to the notice, he would be subject to Wisconsin Code of Professional Responsibility DR2–103(A) and DR2–104(A), which deal with the improper solicitation of clients. While plaintiff's attorney has apparently taken steps to prevent any such charge being made against him, the penalty for a violation of these provisions could lead, in severe cases, to disbarment.

In summary, this Court denied plaintiff's motions requiring an answer to its requests for interrogatories, compelling responses to its requests for admissions, and authorizing the placement of its proposed notice in the Green Bay, Wisconsin newspaper. The Court grants defendant's motions objecting to plaintiff's requests for admissions and interrogatories, its motion in limine and its motion in limine II.

This Court further orders that plaintiff and her attorney to refrain from mentioning, referring to, interrogating, concerning, voluntarily answering, or attempting to convey before the jury, at any time during these proceedings in any manner, either directly or indirectly, the subject matter of this memorandum and order without first obtaining permission of this Court outside the presence and hearing of the jury. This Court further orders that plaintiff and her

attorney refrain from making any reference or inference to the fact that this motion has been filed, argued or ruled on by this Court, and warn and caution each witness appearing in this litigation to strictly comply with the ruling of this Court.