**Rosalind G. STERN, Plaintiff,**

v.

**ESPIRITO SANTO BANK OF FLORIDA, a Florida banking corporation, Defendant.**

**No. 91–1310–CIV–KING.**

United States District Court, S.D. Florida.

May 11, 1992.

Ronald Alter, Miami, Fla., for plaintiff.

Guy B. Bailey, Jr., Miami, Fla., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART ESPIRITO SANTO BANK'S MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

This cause comes before the Court upon the motion to dismiss of defendant Espirito Santo Bank of Florida (the "Bank") for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons given below, the Court will deny the defendant's motion to dismiss as to the ECOA claim based on the Raul Stern/CFRP note, and deny the motion to dismiss as to all other counts.

## I. FACTUAL BACKGROUND

Raul Stern, the husband of plaintiff Rosalind G. Stern, was the principal stockholder, chairman of the board, president, and chief executive officer of several corporations. Compl. at ¶ 6. These included Pleasant Hill Point Corporation ("Pleasant Hill"), Deltona Resources, Inc. ("Deltona Resources"), and Central Florida Residential Properties, Inc. ("CFRP"), all Florida corporations. *Id.* Raul Stern made several credit applications to the defendant Bank on behalf of himself and these corporations at different times. *Id.* at ¶ 8. Rosalind Stern was not involved with any of the corporate businesses. *Id.* at ¶¶ 7, 9. Nevertheless, in granting credit to Raul Stern and his corporations, the Bank allegedly demanded and received Rosalind Stern's personal guaranties on each of three separate credit transactions, which are the subject of this action. *Id.* at ¶¶ 11–12.

Raul Stern died on December 27, 1990. *Id.* at ¶ 4. Thereafter, Espirito Santo Bank declared the three promissory notes due and filed three separate actions against Rosalind Stern on the notes in the Florida state courts. The notes sued on are (1) a November 21, 1988 Pleasant Hill promissory note for $800,000;[1] (2) a June 30, 1989 Deltona Resources promissory note for $520,000;[2] and (3) a Raul Stern/CFRP promissory note for $1,600,000 executed on August 8, 1989 and renewed on August 3, 1990.[3]

On June 21, 1991, Rosalind Stern filed this action for damages and injunctive relief against Espirito Santo Bank. Rosalind Stern claims that the Bank discriminated against her when it required her to guarantee her husband's loans. The Second Amended Complaint contains five counts: (1) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.* (1982 & Supp.1991); (2) violation of Fla. Stat. § 725.07; (3) slander of credit; (4) intentional infliction of emotional distress; and (5) abuse of process.

The Bank filed a motion to dismiss the Second Amended Complaint pursuant to

---

1. Civil Action No. CI 91–608, filed on May 20, 1991, in the Circuit Court in and for Osceola County.

2. Civil Action No. 91–3984–CI–DL, filed on May 23, 1991, in the Circuit Court in and for Volusia County.

3. Civil Action No. CI 91–3610, filed on May 23, 1991, in the Circuit Court in and for Orange County.

Rule 12(b)(6), moving to dismiss the ECOA claim and requesting that this Court decline to exercise jurisdiction over the supplemental state claims. Stern has filed a memorandum in opposition, and the Bank has filed a reply. The Court held oral argument on the motion on April 8, 1992.[4]

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), and may only grant the motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In addition, the court must, "at this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

The Bank has moved to dismiss the entire Complaint. Because the ECOA claim is the only federal cause of action, the Court will address that issue first.

## III. THE EQUAL CREDIT OPPORTUNITY ACT

The ECOA was enacted to insure that financial institutions make credit decisions fairly and without discriminating on the basis of sex or marital status. *See* 12 C.F.R. § 202.1(b) (1992). "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir.1982). The ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status...." 15 U.S.C. § 1691(a)(1). Specifically, the ECOA prohibits a creditor from requiring a spouse's signature on a note when the applicant individually qualifies for credit. 12 C.F.R. § 202.7(d)(1); *Anderson*, 666 F.2d at 1276, 1277.[5]

Only those persons who qualify as "applicants" can maintain civil actions such as this one under the ECOA. The regulations under the original 1974 Act defined an applicant as

> any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may be contractually liable regarding an extension of credit other than a guarantor, surety, endorser, or similar party.

12 C.F.R. § 202.2(e) (1985). In 1986, the Board of Governors of the Federal Reserve System adopted Regulation B, to include guarantors as "applicants" under the ECOA. The revised regulation defined an applicant as

> any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties.

12 C.F.R. § 202.2(e) (1992).

Rosalind Stern argues that she is an aggrieved applicant for purposes of the ECOA, and that the Bank violated the Act when it required her to guarantee three

---

4. The Court originally dismissed this action when the plaintiff failed to timely respond to the motion to dismiss. However, upon motion of the plaintiff, the Court later granted the plaintiff's motion for reconsideration and vacated its prior order. *See* Order of April 10, 1992.

5. § 202.7(d)(1) states in pertinent part:

   a creditor shall not require the signature of an applicant's spouse ..., other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

   § 202.7(d)(5) states:

   *Additional Parties.* If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the extension of the credit requested, a creditor may request a cosigner, guarantor, or the like. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

separate promissory notes on the basis of her marital status. The Court will discuss each note below.

### A. Pleasant Hill note

■ On November 21, 1988, Rosalind Stern executed a guaranty in favor of the Bank of an $800,000 loan to Pleasant Hill. Compl. at ¶ 13. The Bank argues that the claim concerning the Pleasant Hill note is time barred because the statute of limitations for civil actions under the ECOA is two years. 15 U.S.C. § 1691e(f). The Pleasant Hill note was signed on November 21, 1988, and this action was filed on June 21, 1991.

Stern contends that an ECOA violation occurs "when the discrimination affects the credit relation." Pl.'s Opp. at 11. In other words, the statute of limitations began to run when the Bank attempted to enforce the guaranty and Stern was served with process in the state court actions. In support, Stern cites *Miller v. American Express Co.*, 688 F.2d 1235 (9th Cir.1982). In that case, Miller's American Express card was canceled after her husband died and her marital status changed. The court held that termination of credit as a result of the death of a spouse was precisely the type of credit discrimination that ECOA was designed to prevent. *Id.* at 1240. Stern argues that if Espirito Santo Bank were correct in its position, Miller's cause of action would have arisen at the time she signed the credit application rather than when the credit was terminated.

The Court disagrees and finds the *Miller* case inapposite. As the Bank notes, the violation alleged in *Miller* was the termination of credit, not the signing of the application. The Ninth Circuit explicitly relied on an ECOA regulation which prohibits the termination of a person's account on the basis of a change in marital status. *Id.* at 1237; *see* 12 C.F.R. § 202.7(c)(1).

Stern also cites a Title VII case for the proposition that a statute of limitations be-

gins to run when the effect of the discrimination is suffered for the first time.[6] In *Abramson v. University of Hawaii,* 594 F.2d 202 (9th Cir.1979), the Ninth Circuit held that a provision of Title VII effective in March 1972 applied to employees whose employment contracts were executed before March 1972 but whose denials of tenure were not final until after that date. *Abramson* is analogous to *Miller* and not to the case at bar: the violation in *Abramson* was the denial of tenure and not the initial employment contract. Thus, *Abramson* likewise provides little guidance.

■ The Bank argues that the violation, if any, occurred when the note was signed. Generally a limitations period begins to run when the plaintiff knows or has reason to know of the injury which forms the basis of the action. *New Port Largo, Inc. v. Monroe County,* 706 F.Supp. 1507 (S.D.Fla.1988). The plaintiff is charged with knowledge of the legal effect of the documents she signed. *Sabin v. Lowes of Florida, Inc.,* 404 So.2d 772 (Fla. 5th DCA 1981). Courts interpreting the ECOA under facts similar to these have consistently held that the violation occurs, and the limitations period begins to run, upon the signing of the note. *See, e.g., Marine American State Bank v. Lincoln,* 433 N.W.2d 709, 712 (Iowa 1988) ("The statute's focus is upon the time of the discriminatory actions, not the time at which the consequences of the action became painful."); *Ford City Bank v. Goldman,* 98 Ill.App.3d 522, 54 Ill.Dec. 11, 13, 424 N.E.2d 761, 763 (1981) (striking ECOA counterclaim because note was signed more than two years before claim was filed).

In this case, the violation alleged is that the Bank illegally required Stern's guaranty for her husband's loan. If a violation of the ECOA occurred, it occurred at the time that the Bank required Stern to sign, in November 1988. Therefore, the Pleasant

---

**6.** In a case with facts similar to the instant case, the First Circuit rejected this same comparison, holding that the cause of action accrued when the bank presented the husbands with doc-

uments requiring their wives' signatures. *See Farrell v. Bank of New Hampshire–Portsmouth,* 929 F.2d 871, 873–74 (1st Cir.1991).

Hill claim is time-barred and the motion to dismiss will be granted as to this claim.

### B. Deltona Resources note

On June 30, 1989, someone allegedly forged Rosalind Stern's signature to guarantee a $520,000 loan to Deltona Resources. Compl. at ¶ 14. The Bank argues that it cannot have violated the ECOA by forcing Stern to guarantee the loan if she never even signed the guaranty. The Complaint itself alleges that the signature of Rosalind Stern is an "obvious forgery." Compl. at ¶ 15. In fact, the Bank voluntarily dismissed the claim against Stern that it had asserted in state court once it realized it was a forgery. Pl.'s Opp. at 3 n. 2. Stern argues that the Bank's claim is still viable since that dismissal was "without prejudice." However, it would be a miscarriage of justice to allow Stern to defend the first suit by crying forgery, then permit her to maintain a suit for discrimination based on the same forged signature. Accordingly, the motion to dismiss will be granted as to the Deltona Resources claim as well.

### C. Raul Stern/CFRP note

On June 29, 1983, Rosalind Stern executed a guaranty in favor of the Bank of Raul Stern's personal indebtedness. Compl. at ¶ 17. On August 8, 1989, Raul Stern signed and CFRP guaranteed a $1,600,000 loan, based upon Rosalind Stern's 1983 guaranty. Id. at ¶¶ 17–18. On August 9, 1990, Raul Stern executed a renewal and replacement mortgage note to the Bank on that loan. Id. at ¶ 18. At that time, the Bank did not seek to have Rosalind Stern reaffirm her 1983 guaranty.

The Bank argues that Stern lacks standing to sue under the ECOA for this guaranty, since she was not an "applicant" for purposes of the Act in effect at the time that the guaranty was signed. The Bank also contends that this claim is time-barred.

It is undisputed that when Stern signed the guaranty, it was not illegal for the Bank to require her signature. The real issue is whether the renewal qualifies as an act of discrimination against Stern, to give her standing and bring the claim within the statute of limitations.

Stern argues that the Bank had an obligation to reevaluate the need for her guaranty when it reconsidered Raul Stern's creditworthiness in 1990, and to release her if she was no longer needed.[7] Although the ECOA does not speak directly to renewals in defining violations, the Act defines "applicant" to include a person who applies to a creditor for a renewal. 15 U.S.C. § 1691a(b). The Official Commentary to the ECOA regulations states:

Paragraph 7(d)(5)

3. Renewals. If the borrower's creditworthiness is reevaluated when a credit obligation is renewed, the creditor must determine whether an additional party is still warranted and, if not, release the additional party.

Official Staff Commentary on Regulation B, As Amended Effective April 1, 1990, 55 Fed.Reg. 12,472 (1990).

The Court agrees that the ECOA imposes an affirmative obligation upon a creditor to reevaluate the need for an additional party when a credit obligation is renewed, and to do so without discriminating on the basis of marital status or any of the other bases enumerated in the Act. Thus, under the *Conley* standard, the Court finds that Stern does have standing to sue and has stated a cause of action under the ECOA for the 1990 renewal of the Raul Stern/CFRP loan.

## IV. SUPPLEMENTAL STATE CLAIMS

Counts II through V of the Second Amended Complaint are claims based purely on state law. Since these claims have been raised by Stern as counterclaims to the pending state actions, judicial economy would best be served by allowing the Florida courts to decide them. The Court de-

---

7. Stern also argues that another violation occurred when the Bank attempted to enforce the guaranty by filing suit. However, as discussed above, this would not be a violation of the ECOA.

clines to exercise supplemental jurisdiction over these claims.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Bank's motion to dismiss is GRANTED in part and DENIED in part; and all claims are hereby DISMISSED, EXCEPT the ECOA claim based on the Raul Stern/CFRP loan.

DONE and ORDERED.