Patsy **ANDERSON**, Plaintiff-Appellant,

v.

**UNITED FINANCE COMPANY,**
Defendant-Appellee.

No. 80–3125.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 15, 1981.

Decided Feb. 4, 1982.

Rebecca Gordon Orf, Ashland, Or., argued, for plaintiff-appellant; David M. Orf, Ashland, Or., on brief.

Floyd Hinton, Deich, Deich & Hinton, Portland, Or., for defendant-appellee.

Before FLETCHER and CANBY, Circuit Judges, and COPPLE,* District Judge.

COPPLE, District Judge:

This is an appeal from the judgment of the United States District Court for the District of Oregon, dismissing the case on the merits, and awarding Mrs. Anderson no relief.

Appellant, Mrs. Anderson, applied for a loan with appellee, United Finance Company, on March 15, 1978. Appellee conducted an investigation to determine appellant's credit worthiness. All credit background verification was done solely in appellant's name. Upon the basis of this investigation, appellee agreed to grant appellant the loan, using certain household goods as security.

The household goods which were to be used as collateral were jointly owned by appellant and her spouse. Consequently, to perfect a valid lien against the household goods, appellee required the signature of both appellant and her spouse on the security agreement.

In addition, appellee required that appellant's spouse sign the underlying promissory note. Appellant testified that she specif-

---

* Honorable William P. Copple, United States District Judge for the District of Arizona, sitting by designation.

ically requested that the loan be placed in her name only. She was attempting to establish individual credit. Furthermore, her husband instructed appellee that he did not want to be liable on the note. He was on welfare and disabled at ˙the time. Nevertheless, appellee's employee told appellant that both signatures were necessary.

The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.* (1976), and its guidelines, prohibit a creditor from requiring a spouse's signature on a note when the applicant individually qualifies for credit. Prior to appellant's application, appellee had issued to all its branches written guidelines pertaining to the ECOA. Nevertheless, appellee's employees had a policy of requiring spouses' signatures on notes in violation of the Act. In the present case, although appellee eventually granted the loan solely upon appellant's apparent willingness and ability to repay, the loan was made out in the name of appellant and her spouse. Furthermore, the check for the funds issued by appellee was made out solely in the name of appellant's spouse.

Appellant brought this action pursuant to the ECOA. The case was tried on December 12, 1979, to a United States Magistrate, pursuant to stipulation by the parties. After trial the court concluded as a matter of law that although appellant had "technically violated" the Act by requiring appellant's spouse to sign the loan documents, such violation did not result in discrimination. The court therefore concluded that appellee was not liable, and that, in any event, appellant had not sustained any damages. For the reasons set forth below we reverse the judgment of the District Court.

*Liability*

The issues on this appeal arise under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (1976), and its implementing regulations, Regulation B, 12 C.F.R. § 202.1 *et seq.* (1979) (replaced by 12 C.F.R. § 202.1 *et seq.* (1981)).

The pertinent provision of the Act states that it "shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, . . . on the basis of . . . marital status . . . ." 15 U.S.C. § 1691(a) (1976). The regulations define the term "discriminate against an applicant" to mean "to treat an applicant less favorably than other applicants." 12 C.F.R. § 202.2(n) (1979).

Specifically the regulations further state that "a creditor shall not require the signature of an applicant's spouse . . . , other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (1979).

It is clear that appellee has violated regulation § 202.7(d)(1). Appellant qualified individually under appellee's standards of credit worthiness. The loan was granted solely upon appellant's willingness and ability to repay. Nevertheless, in spite of appellant's objections, appellee required the signature of appellant's spouse on the loan documents. Requiring spouses' signatures on notes was a continuing policy of the appellee, which was consistently applied prior to appellant's application, even though written guidelines for compliance with the Act had been distributed. Appellee's manager testified there was no reason for a co-signer on the loan, other than the fact that jointly-owned property was put up for security.[1] Furthermore, he stated that if appellant had not been married, she would not have been required to obtain another signature.

The major issue presented upon appeal is whether this clear violation of the regulations is "discrimination" prohibited by the ECOA. The District Court held that this "technical violation" did not result in any discrimination under the Act. However, this violation is just the type of discrimination which the Act was created to prohibit.

---

1. We do not reach the issue of whether spouses could be compelled to sign notes if state law required their signature to create a valid lien. *See* FRB Letter, 5 Cons. Cred. Guide (CCH)

¶ 42,081 (April 20, 1976). There has been no showing in this case that Oregon law requires the spouse to sign the note in order to perfect a lien on the secured property.

■ The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit. *See, Markham v. Colonial Mortgage Service Co., Associates Inc.,* 605 F.2d 566, 569 (D.C.Cir.1979). Regulation 202.7(d)(1) is a specific rule created by the Federal Reserve Board which is totally consistent with the purpose of the Act. The rationale behind § 202.7(d)(1) is to insure that individual credit is, in reality, available to any credit-worthy married applicant. Maltz & Miller, *The Equal Credit Opportunity Act and Regulation B*, 31 Okla. L.Rev. 1, 34 n.162 (1978). If the spouse were required to sign the credit instrument, the credit offered would be joint, not individual credit, and this would be discrimination on the basis of marital status. *Id.*

There has been little judicial interpretation of § 202.7(d)(1), or even of the ECOA itself. Nevertheless, various informal opinions of the Federal Reserve Board and the Comptroller of the Currency have held that denial of individual credit is indeed discrimination under the ECOA.

The Board and the Comptroller have repeatedly stated that if an applicant qualifies for a loan under the creditor's standards, the creditor may not require the signature of an applicant's spouse. *See,* Comptroller of the Currency Letter, No. 5 Cons. Cred. Guide (CCH) ¶ 42,100 (Oct. 27, 1977); Comptroller of the Currency Letter, No. 5 Cons. Cred. Guide (CCH) ¶ 42,096 (Sept. 14, 1977); FRB Letter, No. 5 Cons. Cred. Guide (CCH) ¶ 42,081 (April 20, 1976). The spouse's signature cannot be required on the note, even if the property pledged to secure the loan is jointly owned. *See,* FRB Letter, No. 5 Cons. Cred. Guide (CCH) ¶ 42,084 (March 1, 1977). A distinction must be made between a security agreement which pledges an interest in property, and a note which renders the signer personally liable on a loan. *See,* Comptroller of the Currency Letter, No. 5 Cons. Cred.

Guide (CCH) ¶ 42,100 (Oct. 27, 1977). Thus, the Federal Reserve Board and the Comptroller of the Currency have clearly concluded that when an applicant has individually qualified for a loan, requiring a spouse's signature on a note is a violation of the ECOA.[2]

Section 202.7(d)(1) is a regulation which was created to carry out the purposes of the ECOA. Thus, a clear violation of this regulation should indeed be discrimination within in the meaning of the Act. *Cf., Smith v. Lakeside Foods, Inc.,* 449 F.Supp. 171, 172 (N.D.Ill.1978) (violation of a regulation rendered creditor liable). Therefore, by violating § 202.7(d)(1) of Regulation B, appellee "discriminated" against appellant in violation of the ECOA. Consequently, we reverse the District Court's judgment as to liability.

*Damages and Attorneys Fees*

Although there is liability, appellant cannot recover any damages unless she proves that she is entitled to them under the civil liability section of the ECOA. 15 U.S.C. § 1691e (1976). The ECOA provides for three forms of relief which are pertinent here: (1) actual damages, (2) punitive damages, and (3) attorneys fees.

■ The first type of relief available to appellant under the ECOA is actual damages. The Act states that "any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant . . . ." 15 U.S.C. § 1691e(a) (1976). Actual damages may include out-of-pocket monetary losses, injury to credit reputation, and mental anguish, humiliation or embarrassment. *Owens v. Magee Finance Service, Inc.,* 476 F.Supp. 758, 770 (E.D.La.1979); *Shuman v. Standard Oil Co.,* 453 F.Supp. 1150, 1154 (N.D.Cal.1978). *But see, Cherry v. Amoco Oil Co.,* 490 F.Supp. 1026, 1029 (N.D.Ga.1980). However, the court will not

---

**2.** The Federal Reserve Board also recently issued a policy statement which is consistent with this conclusion. The Board held therein that a violation of § 202.7(d) of Regulation B is considered to be a serious violation of the ECOA. *FRB Policy Statement and Guidelines,* 50 U.S.L.W. 2233 (Oct. 7, 1981).

presume any injury. The actual damages must be specifically proven.

■ The second type of relief available to appellant under the ECOA is punitive damages. The Act states that any creditor "who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a) of this section ...." 15 U.S.C. § 1691e(b) (1976). Although the word "shall" is used, § 1691e(b) does not require an award of punitive damages for every violation of the Act. *See, Shuman,* 453 F.Supp. at 1152 n.1. However, punitive damages may be awarded even absent a showing of any actual damages. *Cherry,* 490 F.Supp. at 1029; *Smith v. Lakeside Foods Inc.,* 449 F.Supp. 171, 172 (N.D.Ill.1978).

■ The Act specifies certain factors to be considered when determining the appropriateness of punitive damages.[3] Although the traditional word "punitive" is used, one of the factors to be considered is whether the creditor's non-compliance was intentional. This suggests that punitive damages could be awarded even though the creditor's actions were not wanton, malicious or oppressive. *Shuman,* 453 F.Supp. at 1154.

Thus, courts are allowed to award punitive damages under § 1691e(b) even though the creditor's conduct is not wanton, malicious or oppressive, in order to increase the incentive for creditor compliance. This incentive is particularly appropriate when actual damages are difficult to prove. However, since punitive damages are awarded to punish the defendant and to serve as an example or warning to others not to engage in similar conduct, they are only justified when the defendant has committed a particularly blameworthy act. *Shuman,* 453 F.Supp. at 1155.

Consequently, we hold that punitive damages may be awarded pursuant to § 1691e(b) if (1) the creditor wantonly, maliciously or oppressively discriminates against an applicant, or (2) the creditor acts in "reckless disregard of the requirements of the law", even though there was no specific intention to discriminate on unlawful grounds. *Shuman,* 453 F.Supp. at 1155. This determination is to be made by considering all the relevant factors, particularly those listed in § 1691e(b) itself.

■ The third type of relief available to appellant under the ECOA is attorneys fees. The applicable provision states that if there is a successful action under either § 1691e(a), (b) or (c), then the "costs of the action, together with a reasonable attorney's fee ... shall be added to any damages awarded by the court ...." 15 U.S.C. § 1691e(d) (1976). Thus, attorneys' fees are available to appellant only if there has been a "successful action", whether the success lies in obtaining actual or punitive damages, or injunctive or declaratory relief.

■ The size of the attorney's fee is to be determined by the court. 15 U.S.C. § 1691e(d) (1976). The court should consider all the relevant factors on a case-by-case basis, including the amount of damages awarded, the number of past and future consumers affected by the creditor's discrimination, the complexity of the litigation, and the time expended. Plaintiffs who cause a creditor to halt an illegal practice should be compensated for their attorneys' fees.

*Conclusion*

In its conclusions of law the District Court did not specifically concern itself with the issues of actual damages, punitive damages or attorneys fees under § 1691e, because it found there was no liability. Therefore, since these issues were not fully decided by the District Court, this case is

---

**3.** The court is directed to consider all relevant factors, including "the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. § 1691e(b) (1976).

remanded for further proceedings consistent with this Opinion.[4]

REVERSED AND REMANDED.

**4.** We do not express an opinion as to the merits of appellant's claim for damages.