**UNITED STATES of America**

v.

**LANDMARK FINANCIAL SERVICES, INC.**

Civ. A. No. N–84–3510.

United States District Court, D. Maryland.

June 5, 1985.

J. Frederick Motz, U.S. Atty., D. Md., and Elizabeth H. Trimbell, Asst. U.S. Atty., D. Md., Baltimore, Md., and David A. Levitt, Office of Consumer Litigation-Civ. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Daniel R. Chemers, and William K. Meyer, and Weinberg and Green, Baltimore, Md., for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

Currently pending is a motion for judgment on the pleadings filed by defendant, Landmark Financial Services, Inc. ("Landmark"), pursuant to Fed.R.Civ.P. 12(c). In this case of first impression, Landmark challenges the scope of the government's enforcement powers under section 704 of the Equal Credit Opportunity Act ("ECOA" or "Act"), 15 U.S.C. § 1691c. The parties have thoroughly briefed the issues and no hearing is necessary. Local Rule 6(E). For the reasons set forth hereinbelow, Landmark's motion is denied.

### I.

This case is brought by the United States of America "acting upon the notification and authorization given to the Attorney General by the Federal Trade Commission." Amended Complaint, Introductory Paragraph. The government alleges that Landmark has engaged in practices which provide elderly credit applicants with less favorable treatment than non-elderly applicants. Amended Complaint ¶¶ 9, 10. The government specifically alleges that Landmark's policies and practices "discriminate against elderly applicants on the basis of age, in violation of section 701(a)(1) of the ECOA ... and Section 202.4 of Regulation B, 12 C.F.R. § 202.4." *Id.* at ¶ 13.

For relief, the government contends that these violations, if proven, warrant the imposition upon Landmark of civil penalties of up to $10,000 per violation, consumer redress and injunctive relief. Asserting that section 704 of the ECOA, 15 U.S.C. § 1691c, authorizes the Federal Trade Commission ("FTC") to act through the Attorney General to seek and obtain these forms of judicial relief, the government contends that:

Section 704(c) of the ECOA, 15 U.S.C. § 1691c(c), empowers the [Federal Trade] Commission to enforce any regulation promulgated by the Federal Reserve Board under the ECOA, including Regulation B, in the same manner as if the violation had been a violation of a [Federal Trade] Commission trade regulation rule. Defendant [Landmark] is therefore liable for civil penalties pursuant to section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and for consumer redress pursuant to section 19(b) of the FTC Act, 15 U.S.C. § 57b(b).

Amended Complaint ¶ 14. The government's prayer for an injunction is also premised upon the FTC's authority under the Federal Trade Commission Act to seek an injunction itself or by reference to the Attorney General. 15 U.S.C. § 53, 56.

Landmark strenuously opposes the government's efforts to impose the requested forms of relief arguing generally that the Federal Trade Commission, and thus the United States in this action, is not statutorily authorized under section 704(c) of the ECOA to seek civil penalties or consumer redress based upon the violation alleged. Landmark's Answer, Third Affirmative Defense. Relying on its views of statutory construction, legislative history and the language of the ECOA, Landmark contends first that section 704(c) properly construed authorizes administrative enforcement only, and does not provide authorization for this judicial action; and second, that if the government's interpretation of section 704(c) were accepted, it would create constitutionally impermissible dis-

parity in judicial treatment of persons or entities covered by the ECOA. The narrow issue before this Court, therefore, is whether section 704(c) of the ECOA authorizes the FTC and, in turn, the Attorney General, to bring this action and to obtain the requested relief, including civil penalties and consumer remedies.

## II.

The Equal Credit Opportunity Act, enacted in 1974, is designed to prevent discrimination in the area of consumer credit. The Act makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). The ECOA contains two separate sections for enforcement of the statute, section 704, 15 U.S.C. § 1691c and section 706, 15 U.S.C. § 1691e.

Section 704, entitled "Administrative Enforcement," empowers 12 agencies, including the FTC, to enforce the Act's ban on discrimination.[1] Each agency has enforcement powers over the various creditors subject to that agency's regulatory authority. For example, the Federal Reserve Board, the Interstate Commerce Commission and the Small Business Administration are empowered to enforce the ECOA against federal reserve banks, common carriers and small business investment companies, respectively. Section 704(b), 15 U.S.C. 1691c(b), provides that a violation of the ECOA "shall be deemed to be a violation of a requirement imposed under [the] Act[s] [by which the creditors noted in subsection (a) are regulated]." Thus, for example, a violation of the ECOA by a bank would be considered a violation of the Federal Deposit Insurance Act, while a violation of the ECOA by a federal credit union

would be considered a violation of the Federal Credit Union Act.

Section 704(c) provides that the FTC shall enforce the ECOA "except to the extent that enforcement under the Act is specifically committed to some other government agency." 15 U.S.C. § 1619c(c). This means the FTC is the "enforcer of last resort" for any creditor not clearly falling within the responsibility of any other agency. That same section provides:

For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement imposed under this title shall be deemed a violation of a requirement imposed under [the Federal Trade Commission Act]. *All the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with the requirements under this title*, ... including the power to enforce any Federal Reserve Board regulation as if the violation had been a violation of a Federal Trade Commission regulation rule.

*Id.* (emphasis added). Because Landmark is not regulated by one of the other designated governmental agencies in section 704(a), enforcement of the ECOA rests with the FTC. It is the scope of the FTC's grant of authority that is at the core of this dispute.

The second enforcement provision of the ECOA is section 706, 15 U.S.C. § 1691e, entitled "Civil Liability." That section creates a private right of action against creditors for individuals and classes of aggrieved applicants, and authorizes recovery of actual damages, punitive damages, costs and attorneys' fees. 15 U.S.C.

---

**1.** Administrative enforcement of the ECOA is assigned to the Comptroller of the Currency, Board of Governors of the Federal Reserve System, Board of Directors of the Federal Deposit Insurance Corporation, Federal Home Loan Bank Board, (acting directly or through the Federal Savings and Loan Insurance Corporation), Administrator of the National Credit Union Administration, Interstate Commerce Commission, Civil Aeronautics Board, Secretary of Agriculture, Farm Credit Administration, Securities and Exchange Commission, Small Business Administration and the Federal Trade Commission. 15 U.S.C. 1691c; 12 C.F.R. P 202.1(b).

§ 1691e(a),(b),(d). Section 706 also authorizes the Attorney General to bring suit when the Act is violated. 15 U.S.C. § 1691e(g),(h). This is done in two ways:

(g) The agencies having responsibility for administration enforcement under section 704, if unable to obtain compliance with section 701, are authorized to refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted.

(h) When a matter is referred to the Attorney General pursuant to subsection (g), or whenever he has reason to believe that one or more creditors are engaged in a pattern or practice in violation of this title, the Attorney General may bring a civil action in any appropriate United States district court for such relief as may be appropriate, including injunctive relief.

*Id.*

Thus, under section 706, the Attorney General may bring a civil action to enforce the ECOA if the agency "having responsibility for administrative enforcement" is unable to obtain compliance and refers the matter to the Attorney General. 15 U.S.C. § 1691e(g). Beyond this, the Attorney General may sue on its own initiative if it has reason to believe the creditor is involved in a "pattern or practice" in violation of the Act. 15 U.S.C. § 1691e(h). In either situation, the Attorney General is authorized to seek only "appropriate" relief, including injunctive relief.[2]

As stated, the Amended Complaint rests exclusively on the FTC's broad grant of authority under section 704(c) of the ECOA, 15 U.S.C. § 1691c(c). Landmark argues that, consistent with the delegation of enforcement authority manifested by the structure and language of the Act, the government reads section 704(c) far too broadly. It is Landmark's position that section 704 authorizes *only* administrative enforcement in an administrative forum,

and that section 706 provides the sole explicit grant of judicial enforcement authority. By allowing the government to proceed in this action under section 704(c) of the ECOA, Landmark argues, it will not only destroy the orderly system of enforcement established by Congress, but will also permit the government to recover indirectly those forms of relief the Third Circuit found were not available under section 706 of the ECOA. *United States v. Beneficial Corp.*, 492 F.Supp 682 (D.N.J.1980), *aff'd without opinion*, 673 F.2d 1302 (3d Cir. 1981) (§ 706 authorizes equitable relief but not fines or consumer redress). Viewing this action as an end run on the limitation of relief imposed under section 706, Landmark urges this Court to bar the government's attempt to use those judicial enforcement provisions which Congress, as interpreted by the Third Circuit, has stated are not available. Finally, Landmark contends that acceptance of the government's interpretation of section 704(c) will create an unconstitutional classification which lacks any rational basis because those creditors subject to the FTC's enforcement would be liable for fines and consumer redress while most other creditors covered by the Act would not.

The Court acknowledges the persuasive arguments advanced by Landmark; however, in the end, it is the specific language of section 704(c) of the ECOA that controls the disposition of this action. For the reasons more fully set out below, the Court concludes that section 704(c) allows the FTC and in turn the Attorney General to bring this action and to seek those forms of relief requested in the Amended Complaint.

### III

The Court begins its analysis with the language of the section in dispute. Section 704(c) of the ECOA provides, in pertinent part, that:

---

**2.** In *United States v. Beneficial Corp.*, 492 F.Supp. 682 (D.N.J.1980), *aff'd without opinion*, 673 F.2d 1302 (3d Cir.1981), one of the few cases decided under the ECOA, the Third Circuit held that the term "appropriate relief" did not encompass fines or consumer redress and was limited to those remedies that are equitable in nature.

[A] violation of any requirement imposed under this subchapter [the ECOA] shall be deemed a violation of a requirement imposed under [the Federal Trade Commission Act]. *All of the functions and powers of the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with the requirements imposed under [the ECOA],* ..., including the power to enforce any Federal Reserve Board regulation promulgated under this title in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

15 U.S.C. § 1691c(c) (emphasis added).

By its explicit terms, the FTC has all the functions and powers to enforce the ECOA that it has to enforce the FTC Act. The FTC Act expressly provides that:

> The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this Act respecting unfair or deceptive acts or practices....

15 U.S.C. § 45(m)(1)(A). The FTC is also authorized to seek consumer redress, 15 U.S.C. § 57b(b), and injunctive relief, 15 U.S.C. § 53(b). Finally, the FTC has the option of suing for rule violations either directly or through the Attorney General. 15 U.S.C. § 56.

Notwithstanding the plenary grant of power from Congress to the FTC, Landmark contends that the authority conferred on the FTC and other agencies under section 704 is administrative authority only, not the authority to bring judicial actions. Landmark finds support for its argument in selective quotes from the ECOA itself, as well as its implementing Federal Reserve Board Regulation B.[3] The Court has considered these quotes in the context of the ECOA's enforcement scheme, but is not persuaded that they emasculate the FTC's

clear authorization to use "all of [its] powers" to enforce the ECOA. For the same reason, the captioning of section 704 as "Administrative Enforcement," even when read in context with section 706 captioned "Civil Liability," does not, in this Court's opinion, limit the FTC's broad grant of authority to administrative proceedings only. Section 704(c), read literally, gives the FTC authority to enforce a violation of the ECOA the same as if the violation were that of the Federal Trade Commission Act. And that authority clearly includes the power to bring a civil action in a United States district court to seek penalties, consumer redress and injunctive relief. 15 U.S.C. §§ 45(m)(1)(A), 57b(b) and 53(b).

Recognizing the adverse effect of a literal reading of section 704(c), Landmark urges the Court to disregard this literal interpretation and to construe the section contextually in light of Landmark's views of Congress' enforcement scheme under sections 704 and 706 of the ECOA. The Fourth Circuit has mandated the construction urged by Landmark whenever a literal reading of a statute "is irreconcilably at war with the clear congressional purpose ..." *Food Town Stores, Inc. v. E.E.O.C.,* 708 F.2d 920, 924 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). However, as discussed *infra,* this Court concludes that a literal interpretation is not at "war," but rather in harmony with, the congressional purpose of strong enforcement of the Act. Furthermore, as a matter of statutory construction, where the language of a statute is clear and unambiguous and a literal reading does not do violence to the purposes or policies of the Act, alternate readings of the statute, such as the one urged by Landmark, must be rejected. *See Howe v. Smith,* 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981) (clear meaning of statute prevails); *Consumer Product*

---

**3.** For example, section 706(g) of the ECOA states that "agencies having responsibility for *administrative enforcement* under section 704, if unable to obtain compliance, are authorized to refer the matter to the Attorney General ..."

(emphasis added); section 202.1(b) of Regulation B states that the 12 agencies enumerated in § 704 are assigned "*administrative* enforcement of the Act and this Part" (emphasis added).

*Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The legislative history of the ECOA lends some support to this Court's interpretation of the proper breadth of the FTC's authority in this case, but it is not explicit enough to dispose of the issue. Indeed, both parties are able to choose selective quotes from that history to support their respective positions. For example, Landmark cites for support of its argument the following passage from the Senate Banking, Housing and Urban Affairs Committee Report:

> Since discrimination is inherently insidious, almost presumptively intentional, yet often difficult to detect and ferret out, the Committee believed that strong enforcement of this Act is essential to accomplish its purposes. The bill therefore provides enforcement opportunities of three kinds. *Under Section 704 (which remains unchanged) various federal agencies are given administrative enforcement responsibility.* Under the revised Section 706, the United States Attorney General is also authorized to bring enforcement actions, either on referral of cases from the administrative agencies, or on the Attorney General's own initiative where there are patterns or practices in violation of the Act. *The entrusting of enforcement responsibility [in § 706] to the Attorney General is premised on the assumption that that office's experience in the enforcement of other civil rights legislation can be effectively expanded and built on to achieve maximum compliance with the anti-discrimination policies of the Equal Credit Opportunity Act.*
>
> The Chief enforcement tool, however, will continue to be private actions for actual and punitive damages.

S.Rep. 589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. and Ad.News 403, 415 (emphasis added). For its part, the government cites the following statement from Sheldon Feldman, Assistant Director

for Special Statutes of the FTC, to support its position:

> On January 4, 1985, the Magnuson-Moss Warranty—FTC Improvements Act [Public Law 93–637] was signed into law. The FTC improvement provisions of this law are designed to remedy well-documented inadequacies in the FTC's enforcement authority which have hampered the Commission's consumer protection activities for many years. *Among the provisions added [to the FTC Act] is a new section which permits the Commission to seek civil penalties in a United States district court whenever there is a violation of a trade regulation rule promulgated under the Federal Trade Commission Act.* While the existing language of Section 704(c)—and the same language in Section 198(c) of the Truth-in-Lending Act—can reasonably be interpreted to permit use of the new FTC powers in connection with Federal Reserve Board regulations as well as FTC trade regulation rules, this is not clear. *Therefore, we propose the addition of a provision to the Equal Credit Opportunity Act—in Section 704(c)—which would specifically state that the Commission's authority to enforce the regulations issued by the Federal Reserve Board under the Equal Credit Opportunity Act is the same as its authority to enforce FTC rules.*

Hearing on S. 483, S. 1900, S. 1927, S. 1961, and H.R. 6516, 94th Congress, 1st Sess., July 17, 1975, p. 213 (emphasis added).

Despite these conflicting passages, the Court can glean several illuminating observations from the ECOA legislative history. First, it is clear that Congress believed "that strong enforcement of [the ECOA] is essential to accomplish its purposes." S.Rep. 589. 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. in Ad.News 415. Second, that section 704(c) was amended in 1976, as Mr. Feldman seems to suggest, to clarify that:

> [T]he enforcement powers of the Federal Trade Commission include the power to enforce any Federal Reserve Board regulation under this title as if the violation

were a violation of a Federal Trade Commission trade regulation rule.

*Id.,* at 418. The goal of strong enforcement, coupled with the 1976 amendments clarifying the FTC's broad grant of authority under section 704(c), supports a literal reading of section 704(c) and thus the FTC's authority to bring this action in a judicial forum.

It is true, as Landmark suggests, that nothing in the legislative history expressly states that judicial enforcement is available to the agencies, including the FTC, under section 704. It is equally true, however, that nothing in the legislative history prohibits the agencies, including the FTC, from using all of their powers, including civil actions, to obtain compliance with the ECOA. Allowing the FTC to bring this action under section 704(c) not only comports with the plain language of the statute, but is harmonious with Congress's goal of "strong enforcement" of the Act. *See* R. Clontz, Jr., *Equal Credit Opportunity Manual,* ¶ 2.01[3] at pp. 2–5 (3d ed. 1979 and Cum.Supp.1984) (interpreting section 704(c) to include the FTC's broad authority to bring civil actions and to seek penalties and consumer redress for violations of ECOA). Moreover, while not dispositive, it is worth noting that since the enactment of the 1976 amendments to the ECOA, including the language at issue in section 704(c), the FTC has consistently used its authority under section 704 to obtain consent decrees and civil penalties in the federal district courts. *Id.,* at App. F[1] p. F–12 and App. F[2] p. F–23 (1979) and ¶ 2.01[3] at pp. 2–33–2–36 (1984 Cum. Supp.); *see* A. Fortney, *Consumer Credit Compliance and the Federal Trade Commission: Sketching the New Directions,* 39 Bus.Law. 1305, 1311–1312 (1984) (listing actions brought by FTC under the ECOA);

*cf. Chevron, U.S.A., Inc. v. Natural Resources Defense,* —— U.S. ——, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.")

Furthermore, the government's interpretation of section 704 of the ECOA does not violate the equal protection clause of the Constitution. Recognizing that this Court's scope of review of economic classification which involves neither a suspect class nor a fundamental right is exceedingly limited,[4] Landmark nonetheless argues that a statutory enforcement scheme cannot constitutionally impose different penalties on different kinds of business enterprises engaged in the same credit activities. Landmark argues that all creditors stand on equal footing before the Court and thus there is no rational basis for distinctions in the judicial, as opposed to administrative, enforcement of the Act.

In order to fully comprehend Landmark's constitutional challenge it must be understood that, of the twelve agencies given enforcement powers in section 704, only five[5] have authority to seek civil penalties and only one, the FTC, has the authority to seek consumer redress. Moreover, of the five agencies authorized to seek civil penalties, the size of the penalties vary from $100 to $20,000 per violation. All of the other agencies have administrative enforcement authority only, but they can, if unable to obtain compliance with the ECOA, refer the matter to the Attorney General for civil enforcement under section 706. So, at least initially, enforcement of the ECOA depends in part on the offenders and the corresponding jurisdiction of the agency charged with enforcement.

---

**4.** *See, e.g., U.S. R.R. Retirement Board v. Fritz,* 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *United States v. Maryland Savings-Share Insurance Corp.,* 400 U.S. 4, 6, 91 S.Ct. 16, 17, 27 L.Ed.2d 4 (1970); *Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

**5.** The five agencies empowerd to seek civil penalties for violations of the ECOA or Regulation B are: Federal Home Loan Bank Board, 12 U.S.C. § 1425b(b); Interstate Commerce Commission, 49 U.S.C. § 11901; Federal Aviation Administration, 49 U.S.C. § 1471(a)(1); Secretary of Agriculture, 7 U.S.C. §§ 193(b) and 213(b); and Federal Trade Commission, 15 U.S.C. § 45(m)(1)(A).

Landmark's argument that a statute cannot impose different penalties on different kinds of business enterprises engaged in the same activity has been consistently rejected by the courts and loses even more force in light of the varying characteristics that businesses engaged in the same basic activities might possess. *See, e.g., Otero Savings and Loan Association v. Federal Reserve Bank,* 665 F.2d 279, 283 (10th Cir. 1981)("Congress ... may make reasonable distinctions between its treatment of commercial banks and savings and loans"). In *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), the Supreme Court stated that:

> [D]istinctions in the treatment of business entities engaged in the same business activity may be justified by genuinely different characteristics of the business involved. This is so even where the discrimination is by name.

*Id.,* 466, 77 S.Ct., 1350 (footnotes omitted). Furthermore, the ECOA enforcement scheme rests on the rational basis that compliance could best be achieved by subjecting each business to the enforcement mechanisms to which it was already subject through the regulatory control exercised by its primary regulatory agency. Congress has followed a policy similar to that adopted in the Truth-In-Lending Act, 15 U.S.C. § 1607, of dividing the enforcement and the administration of the ECOA among twelve federal agencies. It was hoped that the specialized expertise of these agencies could best be used in the enforcement of the ECOA. Congress could have rationally believed that court-imposed penalties were necessary to deter some ECOA violators while the imposition of administrative penalties are sufficient to deter others. The fact that some creditors, like Landmark, are essentially unregulated by the federal government and thus fall within the FTC's strong enforcement powers does not make the statute unconstitutional, and Land-

mark's equal protection challenge must therefore be rejected.

Finally, the Court rejects Landmark's argument that a civil action brought by an agency under section 704 is inconsistent with the Attorney General's authority to bring a civil action under section 706(g) of the ECOA on the referral of an agency. Landmark contends that because Congress authorized the Attorney General to file a civil suit for appropriate relief under some circumstances, Congress must have intended to restrict all agencies to administrative remedies and to preclude them from employing any judicial enforcement authority in court.

The problem with this argument is twofold. First, in this case, acceptance of the argument would render nugatory the plain language of section 704(c) that the FTC has *"all powers ...* under the Trade Commission Act" to enforce the ECOA (emphasis added). Second, the grant of authority to agencies in section 704 is not necessarily inconsistent with 706(g) nor does it render section 706(g) meaningless.[6] On the contrary, section 706(g) can reasonably be construed as providing those agencies additional authority, beyond what may be contained in their own statutes, to request the assistance of the Attorney General in enforcing the ECOA. This would allow the agencies which chose to refer a matter to draw upon the litigation expertise of the Attorney General in civil rights matters. Indeed, the legislative history previously cited by Landmark supports this position:

> The entrusting of enforcement responsibility [in § 706] to the Attorney General is premised on the assumption that the office's experience in the enforcement of other civil rights legislation can be effectively expanded and built on to achieve maximum compliance with the antidiscrimination policies of the Equal Credit Opportunity Act.

---

**6.** Of the twelve agencies given enforcement authority under the ECOA, eleven have independent authority under their enabling acts to seek judicial enforcement of their agency actions.

*See* Exhibit A to Landmark's Reply Memorandum in Support of Motion for Judgment on the Pleadings.

S.Rep. 589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. and Ad.News 415.

IV.

The Court recognizes that by allowing this matter to proceed under section 704(c) of the ECOA it will allow the government to seek those remedies (civil penalties and consumer redress) that the Third Circuit has held are unavailable under section 706 of the same Act. *United States v. Beneficial Corp.*, 492 F.Supp. 682 (D.N.J.1980), *aff'd,* 673 F.2d 1302 (3d Cir.1981). The Court also recognizes the thoughtful arguments advanced by Landmark in support of its interpretation of administrative versus judicial enforcement of the Act. Nevertheless, the Court is compelled by the plain language of the statute as well as its legislative history to deny Landmark's motion for judgment on the pleadings. A separate Order confirming the within decision will be entered.