**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ITT CONSUMER FINANCIAL CORPORATION, and Aetna Finance Company, Delaware Corporations, Defendants-Appellees.**

No. 85–2810.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1986.

Decided May 5, 1987.

Christine R. Whittaker, Washington, D.C., for plaintiff-appellant.

C. Douglas Floyd, San Francisco, Calif., for defendants-appellees.

Before KENNEDY, TANG and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The government brought this action against ITT Consumer Financial Corporation and Aetna Finance Company ("defendants"), alleging that their money lending practices discriminate against loan applicants on the basis of marital status. Claiming these practices violate the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691e, and Federal Reserve Board Regulation B ("Regulation B"), 12 C.F.R. § 202.7 (1985),[1] the government sought an injunction under 15 U.S.C. § 1691e(h) and $10,000 in civil penalties under 15 U.S.C. §§ 45(m)(1)(A), 1691c(c) and 1691e(h). The district court concluded that the lending practices do not violate the ECOA or Regulation B and granted the defendants' motion for summary judgment. We agree and we affirm.

## I

### FACTS AND PROCEEDINGS

The defendants lend money to individuals, including individuals who live in seven states which have "equal management" community property laws. Under the community property laws of these states the husband and wife have equal management and control of community property. These states are Arizona, California, Idaho, Louisiana, Nevada, New Mexico, and Washington.[2] Defendants make loans in these states on either a secured or unsecured basis, except in Arizona where only secured loans are made. In assessing creditworthiness of an applicant for a loan, the defendants consider the applicant's future earnings and credit history. The defendants require a co-signer if an applicant cannot qualify for an unsecured loan on the basis of his or her own future earnings. The co-signer may be any person whose future earnings sufficiently augment the applicant's future earnings to establish creditworthiness for the loan. Existing assets are not taken into consideration except in the making of secured loans.

In determining whether a married applicant qualifies for an unsecured loan, the defendants do not consider the future earnings of the applicant's spouse unless the spouse agrees to co-sign the promissory note. The government contends that in equal management community property states future earnings of married persons are community property and that under state law in these states the applicant, by his or her signature alone, can obligate a spouse's future earnings to repay a loan. The government argues that defendants discriminate against married applicants when they require a spouse's signature in order to count the spouse's future earnings toward establishing creditworthiness for a loan.

---

1. Regulation B was revised effective December 16, 1985, following entry of judgment by the district court. The revisions are not relevant to the issues in this case.

2. *See* Ariz.Rev.Stat.Ann. § 25–214 (1976); Cal. Civ.Code §§ 5125 (West Supp.1987), 5127, 5128 (West 1983); Idaho Code § 32–912 (1983); La. Civ.Code Ann., Arts. 2346–55 (1985); Nev.Rev. Stat. § 123.230 (1985); N.M.Stat.Ann. § 40–3–14 (1986); Wash.Rev.Code Ann. § 26.16.030 (1986).

## II

### JURISDICTION

Defendants are among the class of creditors required to comply with the ECOA because they regularly extend credit. 15 U.S.C. § 1691a(e). With exceptions not applicable here, the Federal Trade Commission ("FTC") is responsible for enforcement of the ECOA and related Federal Reserve Board regulations. 15 U.S.C. § 1691c(c). If the FTC is unable to obtain compliance with a requirement of the ECOA, the FTC is "authorized to refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted." 15 U.S.C. § 1691e(g). The Attorney General is then empowered to "bring a civil action in any appropriate United States district court for such relief as may be appropriate, including injunctive relief." 15 U.S.C. § 1961e(h); *see United States v. Landmark Financial Services,* 612 F.Supp. 623, 626 (D.Md.1985); *United States v. Beneficial Corp.,* 492 F.Supp. 682, 683 (D.N.J.1980), *aff'd mem.,* 673 F.2d 1302 (3d Cir.1981). Under 15 U.S.C. § 1691c(c), a violation of the ECOA is deemed a violation of the Federal Trade Commission Act, 15 U.S.C. §§ 41–77, which provides for a civil penalty of up to $10,000 for each violation. 15 U.S.C. § 45(m)(1)(A). The government thus had statutory authorization to bring this action and the district court had jurisdiction to hear it. 15 U.S.C. § 1691e(h); 28 U.S.C. § 1345; [3] *see Beneficial,* 492 F.Supp. at 683. We have jurisdiction to hear this appeal from the district court's final judgment. 28 U.S.C. § 1291.

## III

### MERITS

#### A. *The ECOA*

Section 701 of the ECOA provides in pertinent part: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status...." 15 U.S.C. § 1691(a)(1). "We must construe the literal language of the ECOA in light of the clear, strong purpose evidenced by the Act and adopt an interpretation that will serve to effectuate that purpose." *Brothers v. First Leasing,* 724 F.2d 789, 793 (9th Cir.), *cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984) (citation omitted). "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.,* 666 F.2d 1274, 1277 (9th Cir.1982) (citing *Markham v. Colonial Mortgage Service Co.,* 605 F.2d 566, 569 (D.C.Cir.1979)). We have stated that "[t]he ECOA makes it unlawful for any creditor to discriminate with respect to any credit transaction on the basis of marital status." *Miller v. American Express Co.,* 688 F.2d 1235, 1237 (9th Cir.1982). However, section 705 of the ECOA provides in part: "Consideration or application of State property laws directly or indirectly affecting creditworthiness shall not constitute discrimination for purposes of this subchapter." 15 U.S.C. § 1691d(b).

The defendants contend that the community property laws of equal management community property states do not permit a married applicant to obligate his or her spouse's future earnings to repay a loan because those future earnings are not community property. They argue that the spouse's future earnings will become separate property if the community terminates because of death or divorce, and that the character of future earnings may be altered by a move to a noncommunity property state or in some states by separation or agreement of the spouses. The defendants further assert that if the future earnings become separate property those earnings will not be available to repay the loan unless the spouse has signed the promissory note, or some other appropriate document, and so they are justified in requiring the

---

**3.** 28 U.S.C. § 1345 provides in full:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

spouse's signature if an applicant relies on his or her spouse's future earnings to qualify for a loan.

■■■■ Characterization of earnings as separate or community property is established by the time and manner of acquisition.[4] Absent agreement (in some states),[5] separation (in some states),[6] or change of domicile to a non-community property state,[7] earnings acquired during marriage are community property,[8] and earnings acquired after dissolution of the community by death [9] or divorce [10] will be the separate property of the acquiring spouse.[11] Be-

4. *See, e.g., Flynn v. Allender,* 75 Ariz. 322, 256 P.2d 560 (1953); *In re Marriage of Buol,* 39 Cal.3d 751, 705 P.2d 354, 218 Cal.Rptr. 31 (1985); *Matter of Freeburn's Estate,* 97 Idaho 845, 555 P.2d 385 (1976); *Succession of Adger,* 457 So.2d 146 (La.App.1984); *Stroshine v. Stroshine,* 98 N.M. 742, 652 P.2d 1193 (1982); *Estate of Madsen v. C.I.R.,* 97 Wash.2d 792, 650 P.2d 196 (1982). *See also Hisquierdo v. Hisquierdo,* 439 U.S. 572, 578, 99 S.Ct. 802, 806, 59 L.Ed.2d 1 (1979) ("In community property States, ownership [of property as community or separate property] turns on the method and timing of acquisition....").

5. In some states earnings may be transmitted to community property or separate property by agreement. *See, e.g., Balkema v. Deiches,* 90 Cal.App.2d 427, 430, 202 P.2d 1068, 1069–70 (1949), Cal.Civ.Code § 5103 (Supp.1987); *Bender v. Bender,* 123 Ariz. 90, 93, 597 P.2d 993, 996 (App.1979); *Hooker v. Hooker,* 95 Idaho 518, 523, 511 P.2d 800, 805 (1972), Idaho Code § 32–906 (1983); Nev.Rev.Stat. § 123.070 (1985); *Allen v. Allen,* 98 N.M. 652, 654, 651 P.2d 1296, 1298 (1982), N.M.Stat.Ann. § 40–2–2 (1978).

6. In California and Washington the earnings of a spouse while living separate and apart are the separate property of the earning spouse. *In re Marriage of Bouquet,* 16 Cal.3d 583, 546 P.2d 1371, 128 Cal.Rptr. 427 (1976), Cal.Civ.Code § 5118 (1986); *Kerr v. Cochran,* 65 Wash.2d 211, 225, 396 P.2d 642, 649 (1964), Wash.Rev. Code Ann. § 26.16.140 (1986).

7. Change of domicile to a non-community property state will affect the characterization of earnings because the law of the state of domicile at the time of acquisition controls characterization. *See, Rau v. Rau,* 6 Ariz.App. 362, 364, 432 P.2d 910, 912 (1967); *Succession of Dunham,* 408 So.2d 888, 895 (La.1981); *Braddock v. Braddock,* 91 Nev. 735, 740, 542 P.2d 1060, 1063 (1975); *Herrera v. Health and Social Services,* 92 N.M. 331, 334, 587 P.2d 1342, 1345 (App.1978); *In re Marriage of Landry,* 103 Wash.2d 807, 810, 699 P.2d 214, 216 (1985). *See generally Quintana v. Ordono,* 195 So.2d 577 (Fla.App.1967); Restatement (Second) of Conflict of Laws § 258 (1971); 2 American Law of Property § 7.18 at 164 (Casner ed. 1952). *Cf. Addison v. Addison,* 62 Cal.2d 558, 563, 399 P.2d 897, 899–900, 43 Cal.Rptr. 97, 99 (1965) (change of domicile to community property state); *Berle v. Berle,* 97 Idaho 452, 546 P.2d 407, 409–10 (1976) (same).

8. Earnings acquired by either spouse during marriage are community property. *Koelsch v. Koelsch,* 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986), Ariz.Rev.Stat.Ann. § 25–211 (1976); *In re Marriage of Wilson,* 10 Cal.3d 851, 854, 519 P.2d 165, 167, 112 Cal.Rptr. 405, 407 (1974), Cal.Civ.Code § 5110 (1986); *Suter v. Suter,* 97 Idaho 461, 467, 546 P.2d 1169, 1174 (1976), Idaho Code § 32–906 (1983); *Knight v. Kaufman,* 105 La. 35, 36, 29 So. 711, 712 (1901), La.Civ.Code Ann. art. 2338 (West 1985); *Frederickson & Watson Const. Co. v. Boyd,* 60 Nev. 117, 121, 102 P.2d 627, 629 (1940), Nev.Rev.Stat. § 123.220 (1985); *Douglas v. Douglas,* 101 N.M. 570, 571, 686 P.2d 260, 261 (1984), N.M.Stat. Ann. § 40–3–8(B) (1978); *State v. Miller,* 32 Wash.2d 149, 159, 201 P.2d 136, 141 (1948), Wash.Rev.Code Ann. § 26.16.030 (1986); *see also Hisquierdo,* 439 U.S. at 578, 99 S.Ct. at 806 (citing California Civil Code Annotated Section 687 (West 1954) for the proposition that "[c]ommunity property includes the property earned by either spouse during the union, as well as that given to both during the marriage.").

9. The community is dissolved on death of either spouse. *See, e.g., In re Pfeffer's Estate,* 16 Ariz. App. 147, 149, 492 P.2d 27, 29 (1971); *In re Duncan,* 83 Idaho 254, 259, 360 P.2d 987, 990 (1961); *Succession of Acosta,* 396 So.2d 499, 501 (La. Court of Appeal 1981), La.Civ.Code Ann. art. 2356 (West 1985); *Matter of Estate of Mell,* 105 Wash.2d 518, 716 P.2d 836, 839 (1986).

10. Earnings acquired after dissolution of the community by divorce are the separate property of the acquiring spouse. *Koelsch v. Koelsch,* 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986); *In re Foy's Estate,* 109 Cal.App.2d 329, 332, 240 P.2d 685, 687 (1952), Cal.Civ.Code § 5119 (1986); *Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169, 1174 (1976); *Depner v. Depner,* 478 So.2d 532, 533 (La.App.1985), La.Civ.Code Ann. arts. 159, 2341, 2356 (West 1985); *Forrest v. Forrest,* 99 Nev. 602, 607, 668 P.2d 275, 278 (1983); *Madrid v. Madrid,* 101 N.M. 504, 506, 684 P.2d 1169, 1170 (App.1984), N.M.Stat.Ann. § 40–3–8(A)(1) (1978); *Togliatti v. Robertson,* 29 Wash.2d 844, 852, 190 P.2d 575, 579 (1948).

11. *See Garrett v. Garrett,* 140 Ariz. 564, 683 P.2d 1166, 1170–71 (App.1983) (attorney's interest in pending contingent fee contracts is community property only to the extent based on work performed during marriage); *Bugh v. Bugh,* 125 Ariz. 190, 608 P.2d 329, 331–32 (App.1980)

cause a spouse's future earnings may become separate property rather than community property, the characterization of future earnings cannot be made prospectively. Earnings cannot be characterized as community property until they are earned. A married applicant's equal management power over community property, therefore, does not extend to the applicant's spouse's future earnings, and the applicant cannot commit his or her spouse's future earnings to repay the loan unless the spouse signs a promissory note or some other document to accomplish that result.[12] Accordingly, a lender is justified in requiring the spouse's signature when a married applicant relies on his or her spouse's future earnings to establish creditworthiness.

We conclude that the defendants' practice of requiring the spouse of a married applicant to co-sign the promissory note when the applicant relies on his or her spouse's future earnings to qualify for a loan involves nothing more than a consideration of state law as it affects the applicant's creditworthiness. The practice is nondiscriminatory under section 705 of the ECOA, and does not violate the Act. 15 U.S.C. § 1691d(b). We next consider whether the practice violates Regulation B.

### B. Regulation B

Pursuant to congressional authorization contained in 15 U.S.C. § 1691b, the Federal Reserve Board promulgated Regulation B, codified at 12 C.F.R. § 202.7, to carry out the purposes of the ECOA. *Miller,* 688 F.2d at 1237. A violation of these regulations constitutes "discrimination" under the ECOA. *Anderson,* 666 F.2d at 1276–77. The government contends that the defendants' married applicant co-signer requirement is prohibited by 12 C.F.R. §§ 202.-7(d)(1), 202.7(d)(3) and 202.7(d)(5).

The government asserts that we should be guided by a Federal Reserve staff member's "informal" interpretation of Regulation B. That interpretation was premised on the assumption that future earnings of either spouse are community property under state equal management community

---

(worker's compensation benefits paid after dissolution of marriage for injuries received during marriage are separate property to the extent they compensate the injured spouse for loss of post-dissolution earnings); *Casas v. Thompson,* 42 Cal.3d 131, 228 Cal.Rptr. 33, 43, 720 P.2d 921 (1986) (military retirement benefits are community property only to the extent that the active service upon which they are based took place during marriage); *Henn v. Henn,* 26 Cal.3d 323, 329, 161 Cal.Rptr. 502, 605 P.2d 10, 12 (1980) (same); *In re Marriage of Shea,* 111 Cal.App.3d 713, 717, 169 Cal.Rptr. 490, 492 (1980) (fringe benefits provided as part of employee's compensation are community property only to the extent they are earned during marriage); *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68, 71–72 (1984) (military retirement benefits are community property only to the extent that the active service upon which they are based took place during marriage); *Cook v. Cook,* 102 Idaho 651, 637 P.2d 799, 802 (1981) (worker's compensation benefits paid after dissolution of marriage for injuries received during marriage are separate property of the injured spouse to the extent they compensate the injured spouse for loss of post-dissolution earnings); *Due v. Due,* 342 So.2d 161, 165–66 (La.1977) (attorney's interest in pending contingent fee contracts is community property only to the extent based on work performed during marriage); *West v. Ortega,* 325 So.2d 242, 248–49 (La.1975) (worker's compensation benefits paid after dissolution of mar-

riage for injuries received during marriage are separate property to the extent they compensate the injured spouse for loss of post-dissolution earnings); *Madrid v. Madrid,* 101 N.M. 504, 684 P.2d 1169, 1171 (App.1984) (value of husband's pension determined by the monthly benefits he was receiving at the time of divorce rather than by increased benefits at the time of trial, because "[t]he increases, coming after the divorce, were not 'acquired' until after the divorce, and [therefore] were the separate property of the husband").

**12.** In equal management community property states, except as noted below, debts incurred by one spouse during the marriage may be satisfied only from community property or the separate property of the incurring spouse, and may not be enforced against the separate property of the non-incurring spouse unless the non-incurring spouse obligates himself or herself to repayment of the debt. Ariz.Rev.Stat. § 25–215 (1976); Cal.Civ.Code §§ 5120.110, 5120.130 (Supp.1987); Idaho Code §§ 32–910, 32–911 (1983); La.Civ. Code, Art. 2345 (1985); Nev.Rev.Stat. §§ 123.-050, 123.090 (Ann.1985); N.M.Stat.Ann. §§ 40–3–10A, 40–3–11 (1986); Wash.Rev.Code Ann. §§ 26.16.010, 26.16.020, 26.15.190 (1986). In California and Nevada separate property of a spouse may be liable for repayment of a debt incurred by the other spouse for necessaries of life. Cal.Civ.Code § 5120.140(a)(1) (Supp.1987); Nev.Rev.Stat. § 123.090 (1985).

property laws because they will become community property if the community continues until those earnings are realized. Based on that premise, the interpretation concludes that "to require the signature of the non-applicant spouse when the applicant has the power to control, manage or dispose of community property would violate the provisions of [section 202.7(d) of Regulation B]." An agency's interpretation of a statute which it has promulgated and administered is entitled to a large measure of deference by the courts. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Where construction or application of a statute is governed by considerations which are not within the agency's area of expertise, the agency's interpretation is entitled to a lesser degree of deference. *Texas Gas Transmission Corp. v. Shell Oil Co.*, 363 U.S. 263, 270, 80 S.Ct. 1122, 1126, 4 L.Ed.2d 1208 (1960); *Grunfeder v. Heckler*, 748 F.2d 503, 505 (9th Cir.1984) (en banc). Resolution of this issue is controlled by an examination of state law, an area not included within the expertise of the Federal Reserve Board. We decline to adopt the interpretation's conclusion which arises from that premise.

1. *Section 202.7(d)(1)*

Section 202.7(d)(1) provides:

Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument *if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.* (emphasis added)

■ If an applicant individually qualifies for the amount of a loan, a creditor is prohibited by section 202.7(d)(1) from requiring the signature of a spouse or other person as a condition of making the loan. *Anderson*, 666 F.2d at 1276. In the case now before us, however, the defendants only require the signature of an applicant's spouse or other person when the applicant does *not* qualify individually for the

amount of the loan requested. Therefore, section 202.7(d)(1) does not apply, and the defendants' co-signer requirement does not violate this section.

2. *Section 202.7(d)(3)*

The government also contends that defendants' practices are prohibited by 202.-7(d)(3), which provides:

If a married applicant requests unsecured credit and resides in a community property state, or if the property upon which the applicant is relying is located in such a state, a creditor may require the signature of the spouse on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the community property available to satisfy the debt in the event of default if:

(i) Applicable state law denies the applicant power to manage or control sufficient community property to qualify for the amount of credit requested under the creditor's standards of creditworthiness; and

(ii) The applicant does not have sufficient separate property to qualify for the amount of credit requested without regard to community property.

Section 202.7(d)(3) applies to married applicants who rely on community property to qualify for unsecured credit. In our case, the defendants require a co-signer for married applicants who rely on a spouse's future earnings to qualify for unsecured credit. Because a spouse's future earnings are not community property, section 202.-7(d)(3) is not applicable and does not prohibit the defendants' lending practice of requiring a co-signer when future earnings of a spouse are relied on to qualify for an unsecured loan.

3. *Section 202.7(d)(5)*

The government's final contention is that the defendants' lending practices violate section 202.7(d)(5). This section provides:

If, under a creditor's standard of creditworthiness, the personal liability of an additional party is necessary to support the extension of the credit requested, a

creditor may request a cosigner, guarantor, or the like. The applicant's spouse may serve as an additional party, but the creditor shall not *require* that the *spouse* be the additional party. (emphasis added)

As we have noted, when the defendants require a married applicant to obtain a co-signer, the co-signer may be anyone, either the spouse or another person, whose future earnings sufficiently augment the applicant's future earnings to qualify for the loan. The defendants do not require the applicant's spouse to be the additional party to the loan transaction. Thus, the defendants' co-signer requirement does not violate section 202.7(d)(5).

## IV

## CONCLUSION

We conclude that the defendants' co-signer requirement does not violate the ECOA or Regulation B. The co-signer requirement in this case is distinguishable from the lending practice we held to be discriminatory in *Anderson*, 666 F.2d 1274. In *Anderson*, we held that the ECOA and Regulation B were violated when a lender required a married applicant's spouse to co-sign for a loan to the applicant even though the applicant qualified individually under the lender's standard of creditworthiness and no co-signer would have been required if the applicant had not been married. Here, the defendants require a co-signer only if an applicant does not qualify individually under the defendants' standards of creditworthiness. A co-signer is not required of a married applicant unless a co-signer would be required of a similarly situated unmarried applicant.

AFFIRMED.